UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PATRICK PHILIP DECAROLIS,<br><br>Petitioner,<br><br>v.<br><br>BRIAN WILLIAMS, et al.,<br><br>Respondents. | Case No. 2:14-cv-01379-KJD-PAL<br><br>ORDER |

This *pro se* 28 U.S.C. § 2254 first-amended habeas petition filed by Patrick Philip DeCarolis comes before the court for disposition on the merits (ECF No. 17).

## I. Procedural History and Background

As this court has previously set forth in the order granting respondents' motion to dismiss certain claims, on December 2, 2010, a jury found DeCarolis guilty of count 1: burglary; count 2: forgery; and count 3: attempted theft (exhibit 28 to motion to dismiss, ECF No. 21).[1] On January 4, 2012, following trial but prior to sentencing, DeCarolis moved to dismiss his trial counsel for providing ineffective assistance. Exhs. 40, 41. The state district court appointed new counsel for the limited purpose of reviewing DeCarolis' motion to dismiss his trial counsel. Exh. 43. On February 27, 2012, the district court re-appointed DeCarolis' trial counsel to represent DeCarolis at sentencing. Exh. 45.

---

[1] Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 21, and are found at ECF Nos. 22-25.

1

On March 21, 2012, the state district court sentenced DeCarolis, pursuant to Nevada's small habitual criminal statute, to a term of 96 to 240 months for each of the three counts, to run concurrently. Exh. 46, p. 23; *see* NRS 207.010. Judgment of conviction was filed on April 5, 2012. Exh. 55. The Nevada Supreme Court affirmed the convictions on February 13, 2013, and remittitur issued on March 11, 2013. Exhs. 82, 83.

On September 26, 2013, DeCarolis filed a state postconviction habeas corpus petition. Exh. 87. The Nevada Supreme Court affirmed the denial of the petition on July 23, 2014, and remittitur issued on August 20, 2014. Exhs. 118, 119.

DeCarolis dispatched his federal petition for mailing on August 20, 2014 (ECF No. 11). On or about May 6, 2015, DeCarolis filed his first-amended petition (ECF No. 17).

Respondents have now answered the remaining grounds (ECF No. 43), and petitioner has replied (ECF No. 44).

**II.    Legal Standards**

    a. **AEDPA Standard of Review**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>     (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S.

2

685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause

3

requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### b. Ineffective Assistance of Counsel

DeCarolis sets forth several claims of ineffective assistance of trial and appellate counsel in violation of his Sixth and Fourteenth Amendment rights. Ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To

4

establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential."

5

*Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

As discussed below, DeCarolis has failed to show that the Nevada Supreme Court's decision on any of his IAC claims was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d).

### III. Instant Petition

DeCarolis claims several instances of ineffective assistance of trial and appellate counsel. Trial transcripts reflect the following. Walmart employee Nicole Moran

6

testified that DeCarolis came into the Walmart money center and presented a payroll check from The Cool Art Company payable to Patric DeCarolis to cash, along with a payroll stub and an expired driver's license that appeared to have been altered to read "Patric DeCarolis" instead of "Patrick DeCarolis." Exh. 23, pp. 121-138. She stated that she immediately believed the check was fake so she advised her manager who, after unsuccessfully trying to verify that The Cool Art Company existed, called asset protection officer Steve Melton. Moran testified that she engaged DeCarolis in conversation in order to stall him, and DeCarolis told her that The Cool Art Company was his business. *Id.*

Steve Melton testified that he approached DeCarolis and told him he needed to talk to him about a fraudulent check. *Id.* at 154-176. DeCarolis accompanied him to his office. Melton called the police. Without any prompting, DeCarolis told him that he knew the check was fake and was getting a percentage. Melton stated: "He just told us everything about the entire check and who made them, about his car being outside, a female outside in the vehicle. He gave us the make, the model, the license plate, and just said he was getting a percentage of the check." *Id.* at 161. On cross-examination, Melton acknowledged that he did not include any of these statements that DeCarolis allegedly made in his voluntary statement to police or in his asset protection case record. Defense counsel also elicited that Melton thought DeCarolis smelled of alcohol and had blood shot eyes. Melton testified that DeCarolis showed no other signs of being intoxicated, yet when Melton called the police he described DeCarolis as "highly intoxicated."

Las Vegas Metropolitan Police Department Officer Zachary Ivins testified that he arrived at WalMart, read DeCarolis his Miranda warnings, and then began to question the handcuffed DeCarolis. *Id.* at 176-200. Ivins stated that initially DeCarolis said he was just trying to cash his work check, but then he said he was there to cash a check that he had received from an acquaintance named Tammy; he knew the check was

7

fraudulent, and he was to get a percentage of the proceeds. Ivins testified that he observed no signs that DeCarolis was intoxicated. On cross-examination, Ivins stated that there was no video or audio recording of the interview.

Alan Ruvin testified that he owns The Cool Art Company in Las Vegas and that Patrick DeCarolis was never an employee of the company nor did Ruvin know DeCarolis. Exh. 25, pp. 4-15.

**Ground 3A**

DeCarolis claims that trial counsel failed to properly explain a plea agreement to DeCarolis, told petitioner to sign the agreement without reading it and refused to negotiate anything other than burglary (ECF No. 17, pp. 18-19).

Each charge that DeCarolis faced was eligible for sentencing under Nevada's large habitual offender statute. Exhs. 10, 14. At a hearing on May 18, 2010, with DeCarolis present, his counsel informed the court that the parties had reached a deal for a stipulated sentence of 12 to 36 months. Exh. 10. DeCarolis initially indicated to the court that he wished to plead guilty. However, when the court asked DeCarolis if he understood that the court was not bound by counsels' stipulation and could sentence him to 1 to 10 years, DeCarolis seemed confused. *Id.* The court continued the hearing. *Id.* On May 20, 2010, the parties appeared before the court, and DeCarolis entered a plea of not guilty. Exh. 13.

The state district court denied this claim in his state postconviction petition. The court recounted the facts from the arraignment hearing set forth above, and found

> Defendant claims counsel was ineffective because he attempted to trick Defendant into entering into a guilty plea agreement. However, the record belies this assertion.... By Defendant's own admission, counsel communicated this deal [12 to 36 months] to Defendant and informed Defendant it was in his best interest to accept the plea agreement. Then during the plea canvass on May 18, 2010, Defendant appeared equivocal regarding entering into his plea so the court re-set the hearing for May 20, 2010, to give Defendant more time to go over the agreement with his counsel and thereby ensure Defendant actually wanted to enter into the plea. Following the continuance, Defendant decided to reject the State's offer and enter a plea of not guilty on May 20, 2010. Defendant retained the

8

ultimate responsibility for accepting the plea deal, and he chose not to do so in this case. As counsel communicated the plea offer to Defendant and Defendant chose to reject the plea, counsel was not ineffective in any way and this claim is hereby denied.

Exh. 101, p. 5. The Nevada Supreme Court affirmed the denial of this claim, concluding that DeCarolis failed to demonstrate that counsel was deficient or that he was prejudiced. Exh. 118, p. 3. The state supreme court reasoned:

> The plea offer was communicated to appellant, and there was no allegation that trial counsel told him to refuse the plea agreement. Therefore, *Missouri v. Frye*, 566 U.S. 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, 566 U.S. --, 132 S. Ct 1376(2012), do not apply. Further, it appears from his petition that appellant rejected the plea agreement because he wanted more favorable terms. Accordingly, the district court did not err in denying this claim.

*Id*. DeCarolis has not demonstrated that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief as to ground 3A is denied.

**Ground 3B**

DeCarolis argues that trial counsel failed to correct mistakes in the presentence investigation report (PSI), including that it listed aliases that petitioner did not use and mischaracterized portions of his criminal history (ECF No. 17, pp. 22-23).

At sentencing, trial counsel informed the court that one judgment of conviction should not be considered for the purpose of habitual criminal because it was a gross misdemeanor. Exh. 46, p. 6. The state agreed. *Id*. Counsel for DeCarolis also argued that the PSI states that DeCarolis had been incarcerated six times, but that that is deceptive because it was six sentences, but three physical trips to prison. *Id*. at 17.

The state district court denied this claim in the postconviction petition as belied by the record. Exh. 101, pp. 5-6. The Nevada Supreme Court affirmed the denial of this claim, stating that trial counsel informed the district court at sentencing that the report

9

contained an error regarding the number of prior incarcerations. Exh. 118, p. 6. The state supreme court also explained that DeCarolis failed to demonstrate a reasonable probability of a different outcome had trial counsel informed the court of other allegedly incorrect information in the PSI. *Id.*

DeCarolis has failed to demonstrate that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, ground 3B is denied.

**Ground 3C**

DeCarolis contends that counsel failed to provide him with a copy of discovery, did not provide him with "fraudulent information filed by police," and did not tell DeCarolis about his own confession that he knew the check was fake (ECF No. 17, pp. 24-25).

Counsel for DeCarolis filed a motion to suppress his statements to police as not voluntary and knowing because DeCarolis was intoxicated. Exh. 17. DeCarolis was present when the court conducted a pretrial evidentiary hearing and denied the motion. Exh. 23, pp. 41-44.

The state district court rejected this claim in the postconviction petition as a bare assertion with no factual support, stating: "Defendant essentially re-alleges his meritless claim that the 'police, DA, and public defender's office' were all conspiring against him and made up false information in this case" Exh. 101, p. 6. The Nevada Supreme Court affirmed, concluding that DeCarolis failed to demonstrate prejudice because he failed to demonstrate a reasonable probability of a different outcome at trial if counsel had provided discovery to or discussed it with DeCarolis. Exh. 118, p. 3.

DeCarolis has not shown that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Ground 3C is denied.

**Ground 3D**

DeCarolis sets forth several claims in ground 3D. First, he asserts that counsel failed to object to the conduct of the court that denied him the right to a fair trial (ECF No. 17, pp. 27-31). Apparently, what DeCarolis mainly objects to was the State's use of "thought bubbles" over his head in what he claims was altered digital security video but was actually the State's Power Point presentation during its closing arguments. Exh. 25, pp. 65-78. Witnesses testified at trial that no security video or audio or video recording of any type existed. Exh. 23, pp. 190-191.

The state district court found that this was a "permissible demonstrative tool for the State to use" and that counsel had no basis to object. Exh. 101, pp. 6-7. Also rejecting this claim, the Nevada Supreme Court stated that DeCarolis failed to demonstrate deficiency or prejudice because there was no security video presented at trial. Exh. 118, p. 4. The state supreme court observed that DeCarolis appeared to object the Power Point, but failed to demonstrate that it was inappropriate, and that counsel is not deficient for failing to make futile objections. *Id*.

DeCarolis also argues that counsel failed to attempt to show reasonable doubt and offered a "lame excuse of a defense" (ECF No. 17, p. 28). He claims he does not drink, and he disagreed with counsel's proffered defense that he was intoxicated and thus did not knowingly and voluntarily confess and/or was not aware he possessed a fraudulent check. He asserts that counsel "never objected to anything," including to photocopy evidence (ECF No. 17, p. 31).

11

Denying this claim in the postconviction petition, the state district court stated that it is up to counsel, not the defendant, to determine what defenses to develop, and that DeCarolis' disagreement with this defense strategy did not rise to a conflict of interest. Exh. 101, p. 7. The court pointed out that defense counsel lodged several objections during trial (*see* exh. 23, pp. 185-186 -- counsel objected to testimony about DeCarolis' expired driver's license; exh. 25, pp. 13, 22-23, 31 – counsel objected to repetitive testimony and to two jury instructions). The court also noted that the photocopy of two different I.D. cards –an altered I.D. that DeCarolis presented when he attempted to cash the forged check and the second which was his actual I.D.—were introduced through the Walmart employees to whom DeCarolis presented the I.D.'s and that there would have been no legal grounds to object to the exhibit's admission. *Id.* at 8.

The Nevada Supreme Court observed that "because appellant confessed to the police that he knowingly tried to cash a forged check," counsel presented a defense that DeCarolis was drunk rather than try to argue a lack of proof. Exh. 118, p. 4. The state supreme court concluded that this was a reasonable trial strategy and further pointed out that defense counsel also called David Kramer who testified that he introduced DeCarolis to a woman who owned a graphics company and intimated that the check was payment for working on the woman's car. *Id.*; exh. 25, pp. 33-47

DeCarolis also argues that counsel should have interviewed or deposed the Walmart witnesses (ECF No. 17, p. 29). The state district court found DeCarolis "utterly fail[ed]" to prove how such interviews/depositions would have resulted in a more favorable outcome of his case and that nothing in the record indicated that such interviews/depositions would have led to a better outcome at trial. Exh. 101, p. 10.

The Nevada Supreme Court determined that DeCarolis failed to demonstrate deficiency or prejudice because he failed to demonstrate that interviewing or deposing the employees would have produced any exculpatory evidence because the employees testified at trial. Exh. 118, pp. 2-3.

12

DeCarolis has not shown that the Nevada Supreme Court's decision on any of these claims was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Thus, ground 3D is denied.

**Ground 3E**

DeCarolis claims that counsel failed to consult with, hire, and call expert witnesses regarding the digital security video that captured his interactions with Walmart employees (ECF No. 17, p. 32). The Nevada Supreme Court affirmed the denial of this claim, noting, "there was no security video of the offenses." Exh. 118, pp. 4-5; *see also* exh. 23, pp. 190-91. As no security footage existed, trial counsel simply could not consult, hire, or call an expert witness to discuss the non-existent footage. *Id.* Ground 3E is denied as patently meritless.

**Ground 3G**

DeCarolis argues that counsel failed to put on a viable defense of reasonable doubt, including ignoring information and a witness list that DeCarolis provided to him (ECF No. 43, pp. 35-36). However, per DeCarolis, counsel located and called David Kramer as a witness. Kramer testified that he had known DeCarolis about ten years and that DeCarolis worked fixing vehicles. Exh. 25, pp. 33-47. He also testified that he introduced DeCarolis to a woman named Terry who owned a graphics company so that DeCarolis could do some work on the woman's car.

Respondents point out that trial counsel directly attacked the element of intent of DeCarolis' charges. Exh. 25, pp.81-82, 84. Counsel argued DeCarolis did not have the training or experience to spot a fake check. *Id.* at 82. Additionally, counsel argued that DeCarolis cashed the check as payment for a mechanic job. *Id.* at 88-89.

The state district court found that this claim was belied by the record. Exh. 101, p. 9. The state supreme court agreed and pointed to Kramer's testimony. Exh. 118, p. 4.

13

DeCarolis has not shown that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Federal habeas relief as to ground 3G is denied.

**Ground 3I**

DeCarolis asserts that trial counsel failed to file DeCarolis' *pro se* motion to preserve "audio, video, and whatever else was used at trial" (ECF No. 17, p. 41). The Nevada Supreme Court affirmed the denial of this claim, again because there was no security video. Exh. 118, p. 6. Respondents further point out that DeCarolis attempted to file this motion after the jury found him guilty and that he has failed to show how the absence of a motion to preserve evidence, including non-existent evidence, prejudiced him in any way (ECF No. 43, p. 13). Ground 3I is meritless.

**Grounds 3J and 3L**

DeCarolis claims that trial counsel failed to argue at sentencing that all but one of his felony arrests were over ten years old and that he had no violent felony convictions (3J). He also argues that counsel failed to prepare for sentencing, present mitigation evidence, or seek a lesser sentence (ECF No. 17, pp. 42, 45).

At sentencing counsel for DeCarolis raised the issue that, while the PSI reflected six prior incarcerations, that was deceptive because it was only three physical trips to prison. Exh. 46, p. 17-23. He emphasized that this was a nonviolent crime. He also noted that Kramer testified that DeCarolis was going to repair a woman's car and argued that DeCarolis understood that the check was his payment for that work. Counsel confirmed that DeCarolis cares for his twins with Down Syndrome and also has two other daughters (DeCarolis had discussed his family's needs when he addressed the court). He also emphasized that there was a large gap between DeCarolis' prior convictions and this case. Counsel argued that DeCarolis should be sentenced to "some" time in county detention, then probation with a 4 to 10-year suspended sentence.

14

The state district court concluded that counsel cannot be deemed ineffective for failing to make futile arguments. Exh. 101, pp. 10-11, 12. The court noted that the habitual criminal statute used at sentencing did not limit the use of felonies that are more than ten years old and that DeCarolis' claims that counsel failed to prepare, present mitigation evidence, or seek a lesser sentence are belied by the record. The Nevada Supreme Court agreed that these claims are belied by the record; two prior felonies were required to qualify for the small habitual enhancement, and DeCarolis had seven prior felonies. Exh. 118, p. 6. The state supreme court also observed that DeCarolis made a lengthy statement at sentencing, including about his family and his history of drug use, and concluded that DeCarolis failed to demonstrate further mitigation evidence was available or that it would have had a reasonable probability of changing the outcome at sentencing. *Id.*

DeCarolis has failed to demonstrate that the Nevada Supreme Court's decision on these claims was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Federal habeas relief as to grounds 3J and 3L is denied.

**Ground 3K**

DeCarolis contends that counsel failed to call him or "Marina Valdez, Kathy Hoffman, or Leatrice Medall" to testify on his behalf (ECF No. 17, p. 43). He argues that he could have testified as to what really happened and that the other witnesses would have testified that he was going to pick up a Jeep for repairs and had always fixed vehicles to make money. *Id.*

The Sixth Amendment "grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). This includes the right to testify. *Harris v. New York*, 401 U.S. 222, 225 (1971). "Waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so." *U.S. v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).

15

First, the state district court canvassed DeCarolis twice about his right to testify, including answering several questions that DeCarolis had about this right. Exh. 23, p. 202-203; exh. 25, pp. 16-20. When the court subsequently asked him if he wished to testify, he stated "Your Honor, no, I'm not going to take the stand." Exh. 25, p. 28.

Second, as discussed, defense witness David Kramer testified that he had known DeCarolis about ten years and that DeCarolis worked fixing vehicles. Exh. 25, pp. 33-47. He also testified that he introduced DeCarolis to a woman who owned a graphics company in order that DeCarolis could do some work on the woman's car. Thus, respondents argue that the proposed testimony of the other three witnesses appears largely cumulative (ECF No. 43, p. 14).

The Nevada Supreme Court concluded that DeCarolis failed to demonstrate deficiency and prejudice, pointing the district court's canvass, in which the court advised DeCarolis that the decision whether to exercise his right to testify was his alone. Exh. 118, p. 5. The state supreme court also reasoned that DeCarolis failed to demonstrate that there was further evidence to be introduced through the other witnesses and or that any further evidence would have created a reasonable probability of a different outcome at trial. *Id.* at 3.

DeCarolis has failed to demonstrate that the Nevada Supreme Court's decision involved an unreasonable determination of fact or was contrary to or an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1) & (2). Federal habeas relief is denied as to ground 3K.

**Ground 4A**

DeCarolis claims that appellate counsel failed to consult with him regarding the issues to be raised/omitted on appeal (ECF No. 17, p. 47). Respondents point out that DeCarolis does not specify what claims counsel failed to raise (ECF No. 43, p. 15).

The Nevada Supreme Court observed that appellate counsel does not have a constitutional obligation raise every nonfrivolous issue. *Jones v. Barnes*, 463 U.S. 745,

16

751 (1983). Exh. 118, p. 7. The state supreme court concluded that DeCarolis failed to demonstrate deficiency and prejudice, or that any issue that was not raised had a reasonable likelihood of success on appeal.

**Ground 4B**

DeCarolis argues that appellate counsel failed to federalize all issues on appeal (ECF No. 17, p. 50). Appellate counsel raised two claims: (1) a double jeopardy claim that the crimes of burglary, forgery and attempted theft merge because one act constituted the factual basis for all three crimes, citing the Fifth Amendment and *Blockburger v. United States*, 284 U.S. 299 (1932); and (2) a claim that DeCarolis' sentence violated the Eighth Amendment prohibition against cruel and unusual punishment. Exh. 72, pp. 7-8, 13. Ground 4B, therefore, is utterly belied by the record.

**Ground 4C**

DeCarolis claims that appellate counsel failed to withdraw from his case, raised only "lame issues" on appeal, and was under the influence of the district attorney (ECF No. 17, p. 51). The state district court denied this claim, finding it to be a bare allegation with no factual support in the record. Exh. 101, p. 13.

DeCarolis filed a *pro se* motion to dismiss and replace appellate counsel after counsel filed the fast track appeal. Exh. 81. The Nevada Supreme Court denied the motion, explaining that "An appellant may not reject court-appointed counsel and request substitute counsel at public expense absent a showing of adequate cause. *Thomas v. State*, 94 Nev. 605, 607, 584 P.2d 674, 676 (1978). Appellant's general loss of confidence or trust in counsel alone is not adequate cause for the appointment of new counsel." Exh. 80. The Nevada Supreme Court held that DeCarolis failed to demonstrate adequate cause for the appointment of new counsel. *Id.* In affirming the denial of the state postconviction petition, the state supreme court reasoned that DeCarolis failed to show any grounds that would cause objectively reasonable counsel to file a motion to withdraw. Exh. 118, p. 8. The Nevada Supreme Court also held that

17

DeCarolis failed to demonstrate a reasonable probability of success on appeal had appellate counsel asked and been allowed to withdraw.

This court concludes that DeCarolis has failed to demonstrate that the Nevada Supreme Court's decision on any of these appellate IAC claims was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, grounds 4A, 4B, and 4C are denied.

**Grounds 5 & 6**

Finally, DeCarolis argues that the cumulative effect of trial and appellate counsels' ineffectiveness deprived him of his right to a fair trial (ECF No. 17, pp. 52, 54 – labeled as grounds 3 and 4 in the petition). Generally, a separate cumulative error claim for ineffective assistance of counsel is either noncognizable or duplicative of the underlying ineffective assistance claims. In any event, DeCarolis has not demonstrated any errors of counsel to cumulate.

In sum, DeCarolis has failed to demonstrate that the Nevada Supreme Court's decisions on any of his claims of trial and appellate IAC involved an unreasonable determination of fact or were contrary to or an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1) & (2). Accordingly, the petition is denied in its entirety.

**IV.    Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

18

wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating DeCarolis' petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of DeCarolis' claims.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition (ECF No. 17) is **DENIED** with prejudice in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's fourth motion for appointment of counsel/motion to amend (docketed as ECF Nos. 50 and 51) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment and close this case.

DATED: 29 March 2018.

KENT J. DAWSON
UNITED STATES DISTRICT JUDGE